# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KEITH ORI,**
        **Plaintiff,**

      v.                                                                **Case No. 08CV0432**

**FIFTH THIRD BANK,**
**and FISERV, INC.,**
        **Defendant.**

## DECISION AND ORDER

### I. BACKGROUND

I previously dismissed plaintiff Keith Ori's complaint against defendants Fifth Third Bank ("Fifth") and Fiserv, Inc. ("Fiserv"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., but granted plaintiff leave to replead. Plaintiff filed an amended complaint, and defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Congress enacted the FCRA in 1970 to ensure fair and accurate reporting about credit, promote efficiency in the banking system and protect consumer privacy. Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 52 (2007). To accomplish these ends, FCRA imposes certain duties on consumer reporting agencies ("CRAs"). CRAs are entities that "regularly engage. . . in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties . . . ." § 1681a(f). A consumer report is a "communication of . . . information by a [CRA] bearing on a consumer's credit worthiness . . . which is used or expected to be used . . . for the purpose of . . . establishing

the consumer's eligibility for – credit . . . ." § 1681a(d)(1)(A). FCRA requires CRAs to "follow reasonable procedures" to ensure the accuracy of their reports. § 1681e(b). And, when consumers dispute the accuracy of information in their files, CRAs must reinvestigate and possibly delete disputed information. § 1681i(a)(1)(A). Consumers may bring actions to obtain compensation for certain violations of FCRA by CRAs. §§ 1681n and 1681o.

The FCRA also regulates entities that furnish information to CRAs ("furnishers") for use in consumer reports. Furnishers may not report information to CRAs that they know to be erroneous. § 1681s-2(a). However, only the government can enforce a furnisher's breach of such duty. § 1681s-2(d). When consumers notify CRAs that they dispute the accuracy of information in their file, CRAs must notify the furnisher regarding the disputed information. § 1681i(a)(2). And when a furnisher receives such notice, it must: (1) investigate the disputed information; (2) review relevant information provided by the CRA; (3) report investigation results to the CRA; and (4) correct any inaccuracies uncovered. § 1681s-2(b)(1)(A)-(D); see Westra v. Credit Control, 409 F.3d 825, 827 (7th Cir. 2005). Consumers may bring actions to enforce the violations of such duties. §§ 1681n and 1681o.

I dismissed plaintiff's complaint because it failed to allege facts indicating that defendants were CRAs or that they were liable as furnishers. The complaint failed in the latter respect because it did not allege that plaintiff notified a CRA that he disputed information in his file and that the CRA subsequently notified defendants.

## II.  AMENDED COMPLAINT

In his amended complaint, plaintiff alleges that Fifth held mortgages on many homes, including his own, and that it engaged Fiserv to process and transmit information

2


about its mortgages. He alleges that through Fiserv, Fifth provided information to CRAs and that therefore both Fifth and Fiserv were furnishers under the FCRA. Plaintiff further alleges that based on information provided by Fifth and Fiserv, CRAs issued reports that erroneously indicated that he was delinquent in his mortgage payments and that such reports caused his credit rating to suffer. Plaintiff also alleges that he notified CRAs that he disputed such information and that Fifth and Fiserv received notice of the dispute but did not investigate or correct the alleged error. Thus, plaintiff alleges that both defendants violated their duties as furnishers imposed by § 1681s-2(b) to investigate disputed information.

Plaintiff alleges that Fiserv was a CRA as well as a furnisher. He alleges that Fiserv was a CRA because it assembled consumer credit information, primarily on a website, for the purpose of delivering reports on consumers to third parties. Plaintiff further alleges that Fiserv violated its duty as a CRA to use reasonable procedures to ensure the accuracy of the information in its reports.

Plaintiff also alleges that both defendants were negligent and that they libeled him.

### III. STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state a claim upon which relief can be granted, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). I assume the veracity of all well-pleaded factual allegations and then determine whether they

plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows me to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 1949.

## IV. DISCUSSION

Fifth argues that plaintiff's amended complaint against it fails because plaintiff does not allege that the CRAs to which he complained notified it that plaintiff disputed the information that it allegedly furnished. However, if a plaintiff alleges that he notified a CRA that he disputed reported information, he need not also allege that the CRA notified the furnisher of the disputed information because it would be unlikely that he would know whether this was so. See, e.g., Lang v. TCF Nat'l Bank, 249 Fed. Appx. 464, 467 (7th Cir. 2007) ( stating that "a consumer may not, at the time of filing a complaint, be in a position to allege that notification"). At this pre-discovery stage of the case, it is reasonable to infer from plaintiff's allegation that he notified CRAs that he disputed the accuracy of the information in their reports that the CRAs in turn notified the furnisher of the information as the law requires them to do. See Sheffer v. Experian Info. Solutions, Inc., 249 F. Supp. 2d 560, 562-63 (E.D. Pa. 2003). Thus, Fifth's motion to dismiss plaintiff's FCRA claims against it fails.

Fiserv does not dispute that plaintiff states a claim against it as a furnisher but argues that plaintiff's claim against it as a CRA fails. Fiserv contends that it is a reseller rather than a CRA and therefore not subject to most of the duties imposed on CRAs by the

FCRA. However, under the FCRA, a reseller is a CRA,[1] and the duties imposed by the FCRA on CRAs apply to resellers unless specifically exempted. See, e.g., § 1681i(f)(1) (exempting resellers from general CRA reinvestigation requirements). Thus, if as plaintiff alleges, Fiserv was a CRA, it was subject to the duty to follow reasonable procedures to ensure the accuracy of the reports it prepares. Therefore, Fiserv's motion to dismiss plaintiff's FCRA claims against it as a CRA fails.

Based on § 1681t(b)(1)(F), both defendants argue that I must dismiss plaintiff's negligence and libel claims because FCRA preempts state law claims against furnishers, and plaintiff's claims are based on their conduct as furnishers. Section 1681t(b)(1)(F) provides that: "No requirement or prohibition may be imposed under the laws of any State. . . with respect to any subject matter regulated under. . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . ."

In determining whether § 1681t(b)(1)(F) preempts plaintiff's state law claims, my goal is to ascertain congressional intent. The purpose of Congress is the touchstone of preemption analysis. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). Congress may make its intent clear through the language it uses or implicitly express it in a statute's structure and purpose. Id. In the absence of an express congressional directive, a state law is preempted if it actually conflicts with federal law or if federal law so thoroughly

---

[1] Section 1681a(U) provides that "the term 'reseller' means a consumer reporting agency that – (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced."

5

occupies a legislative field as to indicate that Congress left no room for state supplementation. Id. Defendants argue that § 1681t(b)(1)(F) explicitly preempts plaintiff's common law claims because such claims are based on state law "requirement[s] or prohibition[s]."

In evaluating defendants' argument, I give words their plain meaning unless doing so would frustrate the purpose of the statute, lead to absurd results or contravene legislative intent. Gillespie v. Equifax Info. Servs., LLC, 484 F.3d 938, 941 (7th Cir. 2007). I may use a dictionary to determine the plain meaning of words. Id. The key interpretive issue is whether, in stating that § 1681t(b)(1)(F) preempts requirements and prohibitions imposed under the laws of any state, Congress intended to preempt only obligations imposed by positive enactments, i.e., the enactments of state legislative or administrative bodies, or also requirements and prohibitions imbedded in common law.

The preemption provision at issue here is similar to that considered in Cipollone, which a plurality of the Court concluded preempted some common law actions. 505 U.S. at 520-24. However, in a critical respect, the language of § 1681t(b)(1)(F) is different. Whereas the provision at issue in Cipollone preempted actions based on obligations "imposed under State law," § 1681t(b)(1)(F) preempts actions based on obligations "imposed under [state] . . . laws" (emphasis added). The phrase "state law" means something different than "state laws." State law may well encompass state common law, as the Cipollone plurality concluded, see Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005), but giving effect to the plain meaning of the word, laws, state laws does not. Laws refers to enactments of a legislative nature, i.e., statutes or regulations. See, e.g., Black's Law Dictionary 1033 (4th ed. 1968) (defining laws as session laws or statutes); see

6

also id. at 345 (contrasting legislative enactments with "common law"). Thus, § 1681t(b)(1)(F) preempts actions based on state statutes or regulations but not actions based on common law.

Even assuming that the word laws is ambiguous, reading § 1681t(b)(1)(F) in the context of the surrounding language makes clear that Congress intended to refer only to positive enactments. As the court in Manno v. American General Finance Co. explained:

> Congress's explicit exclusion of a Massachusetts and a California statutory cause of action from preemption by t(b)(1)(F) is a strong indication that Congress intended t(b)(1)(F) to preempt statutory claims. This focus on state statutory claims becomes even more evident when all the preemption provisions of 1681t are read together as a whole. In addition to the exemptions from t(b)(1)(F) for certain Massachusetts and California statutes, 1681t contains no less than ten additional exceptions to preemption for specific state statutes: t(b)(2) exempts a Vermont statute from preemption, t(b)(3) exempts certain California and Colorado statutes, and t(b)(4) exempts certain Colorado, Georgia, Maine, Maryland, Massachusetts, New Jersey, and Vermont statutes.
>
> Moreover, two subparagraphs of 1681t-t(b)(1)(B) and t(b)(1)(E)-provide that they "shall not apply to any State law in effect on September 30, 1996," the effective date of the 1996 amendments to the FCRA. This indicates that these provisions were intended to preempt only state regulations enacted after the passage of 1681(t). Because it makes no sense to speak of tort causes of action, derived from English common law, as coming into "effect" after a specific date in 1996, any such subsequent state enactments would have to be statutory in nature.

439 F. Supp. 2d 418, 425 (E.D. Pa. 2006).

The structure of the FCRA also indicates that Congress did not intend § 1681t(b)(1)(F) to preempt state common law claims. This is so because another section of the FCRA specifically deals with such claims. Enacted in the original 1970 version of

7

FCRA, § 1681h(e)[2] acts as a sort of quid pro quo limiting the tort liability of CRAs, furnishers, and consumer report users in exchange for allowing consumers to acquire their information through FCRA-required disclosures (such as §§ 1681m, 1681g, or 1681h). In 1996, Congress significantly amended FCRA, creating § 1681t(b)(1)(F); see Pub.L. No. 104-208, 110 Stat. 3009-396, 3009-453 (1996), but left § 1681h(e) intact. If it had intended the new provision to preempt all tort claims, Congress would have had no reason to continue to immunize furnishers from certain liabilities as it does in § 1681h(e).

In addition, the Supreme Court has repeatedly stated that "repeals by implication are not favored." Branch v. Smith, 538 U.S. 254, 273 (2003 (quoting Universal Interpretive Shuttle Corp. v. Wash. Metro. Area Transit Comm'n, 393 U.S. 186, 193 (1968)). When two statutes are capable of coexistence, courts should regard each as effective unless Congress expresses a contrary intent. Morton v. Mancari, 417 U.S. 535, 551 (1974). Sections 1681h(e) and 1681t(b)(1)(F) can be harmonized, and nothing in FCRA suggests that either should be rendered a nullity.

For the foregoing reasons, I conclude that the FCRA does not preempt the common law claims plaintiff asserts in the present case.

---

[2]"Limitation of liability. . . . no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to §§ 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer."

8

## V. CONCLUSION

Therefore,

**IT IS ORDERED** that defendants' motions to dismiss plaintiff's complaint are **DENIED.**

Dated at Milwaukee, Wisconsin this 14 day of December, 2009.

/s_____
LYNN ADELMAN
District Judge

9